## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FOUNDATION CHURCH INC,

     Plaintiff,

v.                                                    Case No: 8:23-cv-2847-CEH-JSS

INDEPENDENT SPECIALTY
INSURANCE COMPANY and
CERTAIN UNDERWRITERS AT
LLOYD'S AND OTHER INSURERS
SUBSCRIBING TO BINDING
AUTHORITY B604510568622021,

     Defendants.

_____/

## O R D E R

This matter comes before the Court on the Defendants' Motion to Compel Arbitration and Stay or Dismiss the Proceedings (Doc. 12).   In the motion, Defendants, Independent Specialty Insurance Company & Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021, request an order compelling Plaintiff, Foundation Church Inc., to submit its claims to arbitration per the agreement in the policy of insurance. Defendants request the Court stay or dismiss the proceedings while the parties arbitrate. Plaintiff filed a response in opposition (Doc. 19) and Defendants replied (Doc. 22). The Court, having considered the motion and being fully advised in the premises, will grant Defendants' Motion to Compel Arbitration and will stay this case pending arbitration.

**BACKGROUND**

Plaintiff, who owns property in North Port, Florida, that was covered under a policy of insurance with Defendants, alleges that Defendants improperly refused to pay on an insurance claim it submitted for hurricane damage to its property. *Id.* ¶¶ 5, 7, 8, 12. Plaintiff filed this suit for breach of contract under Florida law to recover funds allegedly owed to it under the policy of insurance issued by Defendants. *See* Docs. 1-1, 4. Defendants removed the case to federal court. Doc. 1.

The parties' insurance contract ("the Policy") contains an arbitration provision stating in relevant part that:

> All matters in difference between an insured and the Insurer (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. This Arbitration Clause applies to all persons or entities claiming that they are entitled to any sums under the policy, including, but not limited to, additional insureds, mortgagees, lender's loss payees, assignees, and/or lienholders.

Doc. 4 at 43; Doc. 12 at 5.

The agreement further provides that the arbitration tribunal "may not award exemplary, punitive, multiple or other damages of a similar nature." Doc. 4 at 44. Arbitration is to occur in New York, applying New York law. *Id.* Under the Arbitration Agreement, the parties agreed to arbitrate all disputes, including any dispute regarding arbitrability. *Id.* at 43.

2

Defendants move to compel arbitration of Plaintiff's breach of contract claim and request dismissal or, alternatively, a stay of the litigation while the parties arbitrate Plaintiff's claim. Doc. 12. Specifically, they argue that Plaintiff's claim is subject to the policy's mandatory arbitration agreement. *Id.* at 7. Plaintiff alleges that Defendants failed to pay proceeds owed under the subject Policy, and Defendants deny they owe anything under the Policy. As such, a dispute under the Policy has arisen.

Defendants submit the Arbitration Agreement is enforceable under the New York Convention, as well as the Federal Arbitration Act ("FAA"). *Id.* at 8. Defendants argue that the strong public policy favoring arbitration is even more paramount in the field of international commerce as at least one of the insurers—Renaissance Re (Doc. 4 at 7, 75)—is a foreign entity. Doc. 12 at 8–10. Further, they claim that all four prerequisites for compelling arbitration under the New York Convention are satisfied. *Id.* at 10–11. Additionally, Defendants argue that the Arbitration Agreement is enforceable under the FAA and that the agreement's delegation clause mandates that all issues regarding the formation and scope of the agreement be heard by the arbitration tribunal. *Id.* at 12.

Plaintiff responds in opposition arguing the arbitration provision is unconscionable and unenforceable under the New York Convention and the FAA. Doc. 19. Plaintiff first contends the arbitration agreement is unenforceable because it was not signed by Plaintiff and Plaintiff had no notice of the provision until after the Policy was issued. According to Plaintiff, Defendants slipped the arbitration agreement in without Plaintiff's knowledge as Plaintiff had to pay its full premium

3

before receiving a complete copy of the Policy. Plaintiff argues that it has no adequate remedy in New York and depriving Plaintiff of the opportunity to litigate regarding its Florida property in Florida is unjust. Plaintiff further argues that the arbitration clause is procedurally unconscionable because it was offered on a take-it-or-leave-it basis. Plaintiff requests this Court deny Defendants' motion and declare the Policy to be governed by Florida law.

Defendants filed a reply arguing that the agreement-in-writing requirement is satisfied, and a signature is not required. Next Defendants contend that Plaintiff may not disavow the arbitration agreement for lack of signature, while simultaneously seeking to invoke other provisions of the Policy in its claim for coverage under the Policy. Finally, Defendants submit that the Policy is not unconscionable, unconscionability is not an affirmative defense under the Convention, and regardless, that would be a decision for the Arbitration Panel because all such matters arising under the Policy are delegated to the arbitration tribunal.

## DISCUSSION

In the context of foreign arbitration agreements, two chapters of Title 9 of the United States Code are relevant: (1) Chapter 1, which contains the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16; and (2) Chapter 2, which contains the Convention Act, 9 U.S.C. §§ 201–208. *Escobar v. Celebration Cruise Operator, Inc.,* 805 F.3d 1279, 1283 (11th Cir. 2015).

The FAA addresses arbitration agreements generally and holds that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such

4

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

That said, courts "are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (citation and internal quotations omitted). Further, the Supreme Court has recently explained that courts may not "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." *Morgan v. Sundance, Inc.,* 596 U.S. 411, 417 (2022).

The Convention Act specifically addresses foreign arbitration agreements through its implementation of the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 201. The Convention provides that the United States "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual

5

or not, concerning a subject matter capable of settlement by arbitration." New York Convention, art. II, June 10, 1958, 21 U.S.T. 2517. "[U]nder the Convention and Supreme Court and Circuit precedent, there is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the field of international commerce." *Lindo v. NCL (Bah.), Ltd.,* 652 F.3d 1257, 1275 (11th Cir. 2011). The Convention requires a district court to order arbitration if an international arbitration clause falls within its coverage. *See* 9 U.S.C. § 201; *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir. 2005).

"In deciding a motion to compel arbitration under the [Convention Act], a court conducts a very limited inquiry." *Bautista,* 396 F.3d at 1294. The Eleventh Circuit has established a straightforward framework for this analysis. First, "four jurisdictional prerequisites" must be satisfied to trigger the Convention: (1) an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) one of the parties is not an American citizen. *Northrop & Johnson Yachts Ships, Inc. v. Royal Van Lent Shipyard, B.V.,* 855 F. App'x 468, 472 (11th Cir. 2021). Here, the four prerequisites have been satisfied. Moreover, similar Lloyd's arbitration provisions have been upheld by this court and others. *See, e.g., 12260 Grp., LLC v. Indep. Specialty Ins. Co.*, No. 8:23-CV-1611-CEH-SPF, 2023 WL 8452230 (M.D. Fla. Dec. 6, 2023); *Dak Property Holdings*, No. 2:23-cv-497-SPC-KCD, 2023 WL 5748473 (M.D. Fla. Aug. 2, 2023); *YTECH 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's,*

*London*, 359 F. Supp. 3d 1253 (S.D. Fla. 2019); *German Int'l Sch. of Fort Lauderdale, LLC v. Certain Underwriters at Lloyd's London*, No. 19-60741, 2019 WL 2107260 (S.D. Fla. May 14, 2019); *VVG Real Estate*, 317 F. Supp. 3d 1199 (S.D. Fla. 2018).

Plaintiff's challenge to the jurisdictional elements is unavailing. The pertinent insurance policy establishes a commercial legal relationship and contains an expansive arbitration clause in writing satisfying the first and third elements. Although Plaintiff asserts that the agreement must be signed, this argument fails as will be discussed below. The agreement dictates that arbitration is to be seated in the United States, which is a participant to the Convention, thus satisfying the second element. Lastly, at least one of the insurers is a foreign entity. Nothing more is required. *See, e.g., VVG Real Est. Invs. v. Underwriters at Lloyd's, London,* 317 F. Supp. 3d 1199, 1205 (S.D. Fla. 2018).

Once the four jurisdictional factors are satisfied, as here, the district court is required to compel arbitration unless an affirmative defense applies. The only available defenses are provided in the Convention itself—that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Suazo v. NCL (Bahamas), Ltd.,* 822 F.3d 543, 546 (11th Cir. 2016). The "'null and void' clause . . . limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses." *Bautista,* 396 F.3d at 1302 (noting that the "null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'") (citation omitted). Plaintiff has not offered any defense demonstrating that

the agreement is null and void. Further, Plaintiff's arguments that the matter is not subject to arbitration or the agreement is unconscionable similarly are unavailing.

### 1. Lack of Signature

Plaintiff submits that the agreement is unenforceable because it must have been signed to be enforceable. However, the New York Convention's requirement that the agreement be in writing does not require a signature on the Policy itself, and Plaintiff fails to direct the Court to authority stating as such. The Convention provides:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
> 3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

*See* Convention Done at New York June 10, 1958; T.I.A.S. No. 6997 (U.S. Treaty Dec. 29, 1970) at Article II(2). As Defendants argue, the parties exchanged a signed application during the underwriting process. Doc. 22-2. This exchange of documents satisfies the Convention's "agreement in writing" requirement. *See Bautista*, 396 F.3d at 1300 ("Agreements in writing include . . . an 'exchange of letters or telegrams.'") (citing Convention, art. II(2)). And the Eleventh Circuit has rejected a plaintiff's argument that the Convention Act imposes upon the party seeking arbitration the burden of demonstrating notice or knowledgeable consent. *Id.* at 1301.

### 2. Applicability of New York Law

The parties' agreement states that arbitration is to proceed in New York applying New York law. Plaintiff complains it is unjust to require it to litigate its claim in New York regarding its Florida property. Plaintiff claims that, under New York law, it would lose the right to pursue certain remedies, which it otherwise could seek under Florida law. Plaintiff also claims the choice-of-law provision stems from unequal bargaining power, making it unconscionable to force Plaintiff to incur the costs of litigating this action in New York. Thus, Plaintiff submits that requiring it to become bound by an out-of-state tribunal applying foreign law results in Plaintiff giving up significant substantive Florida rights including appellate review in Florida.

Plaintiff's arguments are without merit. The Eleventh Circuit has held that "the broad defenses applicable in the context of domestic arbitration are not generally available in cases governed by the New York Convention," including challenges to the enforceability of an arbitration agreement on the grounds that it limits available remedies. *Suazo,* 822 F.3d at 547.

Moreover, unconscionability is not an affirmative defense under the Convention. *See, e.g., KDH Architecture Inc. v. Certain Underwriters at Lloyd's, London,* No. 19-60307-CIV, 2019 WL 5260266, at *3 (S.D. Fla. July 25, 2019) (rejecting argument that arbitration agreement was unconscionable, and thus unenforceable because it "required the arbitration to take place in New York and to apply New York law"); *see also Lindo,* 652 F.3d at 1277–1283. Thus, the Court rejects Plaintiff's unconscionability arguments regarding the agreement's choice of law provision.

## CONCLUSION

All four factors needed to compel arbitration pursuant to the Convention are satisfied in this case, and Plaintiff has not proven that the agreement is "null and void, inoperative or incapable of being performed." As a result, the Court will grant the motion and compel arbitration.

Having found that arbitration is appropriate, the Court turns to the question of how this case should proceed. Defendants seek a stay of this matter pending binding arbitration or alternatively dismissal. The Eleventh Circuit has generally held that the proper course is to stay the proceedings rather than dismiss the action. *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *see also Klay v. All Defendants,* 389 F.3d 1191, 1203–1204 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory."). Accordingly, the Court will follow suit and stay the case. It is hereby

**ORDERED**:

1.      Defendants' Motion to Compel Arbitration and Stay or Dismiss the Proceedings (Doc. 12) is **GRANTED**.

2.      Plaintiff Foundation Church Inc. is compelled to arbitrate the claims brought in this suit against Defendants Independent Specialty Insurance Company

and Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021.

3.   The parties shall file a notice informing the Court that the arbitration has concluded, or that their dispute has otherwise been resolved, within ten days of either of such events.

4. This case is **STAYED** pending the arbitration of Plaintiff Foundation Church Inc.'s claims against Defendants. The Clerk is **DIRECTED** to terminate pending motions and deadlines and **ADMINISTRATIVELY CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on April 11, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

11